[389] UPPER ALLOWAYS CREEK v. ELSINGBOROUGH.

1. An indented apprentice gains a settlement in the township where she serves her master a year under the indenture.

2. The order of the justices or Sessions for the removal of an apprentice, or chargeable pauper, should be to the last place of legal settlement.

3. They cannot make an order upon the master to support such apprentice.

On *certiorari* to remove a judgment given by the Sessions of Salem county, reversing an order of two justices for the removal of Elizabeth Sunderland, and Prudence, her bastard child, from Upper Alloways Creek township to Elsingborough. On the appeal to the sessions from this order, it was reversed, and a *certiorari* being brought by Alloways Creek, the case stated was as follows:

The pauper, Elizabeth Sunderland, was, in the year 1791, with the consent of her father, indented as an apprentice to John Hall and his wife, and lived with her said master and mistress, under the indenture, in the township of Elsingborough, for the space of thirteen months. Hall then removed into Salem township, where she lived with him for eight months. She then went to her father's, in Upper Alloways, and thence to her brother's, where she had a bastard, and becoming chargeable, was removed by the overseers under the present order, from Alloways to Elsingborough as the place of her last legal settlement.

*Davenport*, for Alloways. The order of the two justices was right. Where an apprentice has served her master under an indenture for thirteen months in any one township, she thereby gains a legal settlement. *Allinson's Laws* 403—act of March 11th, 1774.

*Leake* and *Aa. Ogden, contra.* Although under the act of assembly an apprentice who serves her master one year gains a settlement in the township where such service is performed, yet the act is inapplicable to a case like the present. The legislature intended by the act in question to confer additional privileges upon apprentices, but in no degree to diminish subsisting obligations.

The master was bound to provide for his apprentice; he takes him for better and worse. *Rex* v. *Hales Owen*, 1 *Str.* 99; 3 *Vin. Abr.* 27, *pl.* 16; 1 *Burns' Just.* 75, *S. C.*

The master is not only bound but is compellable to receive and support his apprentice. *Rex* v. *Easman*, 2 *Str.* 1013; 1 *Burns* 75.

[390] The justice cannot, upon the complaint of the overseers, remove the apprentice from the master; that is, they cannot make void the indenture between the master and his apprentice by which the apprentice is bound to live with his master, and the master is bound to keep the apprentice. 3 *Burns' Jus.* 378, 458.

If the master was compellable to maintain his apprentice, no township, during the existence of the indenture, could be obliged to perform that duty  The master was known—the indenture was known. The place in which the master lived was within their jurisdiction, and his ability to maintain her was unquestioned. The justice, therefore, should have made an order for her removal to him, and not having done so, the sessions were right in quashing it.

That orders of this kind may be made is undoubted law. Burns says, " besides this general form of removal to the place of settlement, there may be other removals, as of wives to their husbands, children to their parents, apprentices or servants to their masters," &c.  3 *Burns' Just.* 576.  In the cases of *King* v. *Gravesend, Comyns* 97, and *King* v. *Banbury, Comber* 372, cited by Burns, orders of this kind were made.

*Davenport,* in reply.  The justices have no jurisdiction but to send the pauper to her place of settlement.  They cannot enter into inquiries as between the master and apprentice, or pronounce upon their respective rights and obligations.  The pauper is admitted to have gained a legal settlement in Elsingborough, and she must be sent there in the first place. If that township can legally compel the master to support his apprentice, she will doubtless do it, but as between the townships of Alloways and Elsingborough, such a claim can have no operation, and the pauper should be removed to the township which is chargeable in the first instance.

KINSEY, C. J.

After stating the circumstances of the case, he observed that the Gravesend case, which seemed to be particularly re-

lied upon as affording a precedent of a removal to the master, was not quite intelligible. The marginal note in *Comyns* [391] clearly states the order to be irregular, because it was to send the pauper to her master, and not to the parish where settled. Be that, however, as it may, such an order is not, as Burns admits, founded on the statute, but on the general power of the justices; and if it was to be admitted that a particular order might be directed to the master, yet the authority of the justices to remove to the last place of legal settlement, is not affected by such a decision. It is clear, however, to us, that they ought to make no other order than such as was made in this instance.

By the twenty-third section of the act of 1774, on complaint that any person is, or is likely to become chargeable, they are directed to examine into the matter, and to make an order on the place of the legal settlement, and no other. This is the rule which they are to follow, and having done so in this case, the order made by the two justices is right.

It has been said the justices cannot sever, or send the servant away from the master, because this amounts to declaring the indenture void. This is not the law; if a servant becomes chargeable, he may be removed. In this case, however, the severance had taken place; the servant was deserted by the master, and had become chargeable to the township; and as the act requiring and empowering justices to remove all chargeable persons, makes no distinctions, the court can make none.

The magistrates can go no further than to inquire where was the last settlement; they have no authority to inquire into private contracts. The act takes notice of the settlement of apprentices, and it makes no provision in regard to their removal, distinct from the general directions in the twenty-third section. Suppose the master unable to support his apprentice, or he should refuse to receive him, there is no summary mode of enforcing obedience to the order. We think it more reasonable that the township where the pauper has acquired a settlement, should, in the first instance, be com-

pelled to maintain him ; and if they can afterwards find any other person who is liable to perform this duty, to obtain redress from him, than to impose this upon the township in which no right has been gained but by intrusion.

[392] We are therefore of opinion the order of Sessions reversing that of the two justices, be quashed, and the order of the justices affirmed.

Order of Sessions quashed.

CITED in *Overseers of Franklin* ⸢v. *Overseers of Bridgewater, Spenc.* 567.